UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| BRYAN TRAVIS ROBISON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:18 CV 1527 CDP |
| DEPARTMENT OF INSURANCE, FINANCIAL INSTITUTIONS AND PROFESSIONAL REGISTRATION, et al., | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Bryan Travis Robison brings this action under 42 U.S.C. § 1983 against the Missouri Department of Insurance, Financial Institutions and Professional Registration (DIFP), and several of its current and former employees, alleging that their revocation of and failure to renew his license as a general bail bond agent in Missouri violated his constitutional rights to due process and to equal protection under the law.

I will grant summary judgment to DIFP because it is immune from suit on Robison's claims. For the same reason, I will grant summary judgment to the individual defendants in their official capacities. The individual defendants are also entitled to summary judgment on Robison's claim that they, in their individual capacities, violated his right to equal protection. To the extent Robison claims that

the individual defendants' failure to renew his license violated his right to due process, defendants are entitled to qualified immunity.

I will deny summary judgment on Robison's claim that the individual defendants' revocation of his license violated his right to due process, however, because genuine issues of material facts remain on that claim. I will set that claim for trial by separate order.

**Background**

Robison was a Missouri licensed general bail bond agent who employed several bail bond agents in the State. Because his license was set to expire on August 8, 2016, Robison submitted his application for renewal to the DIFP in July 2016. On July 29, 2016, John Huff, the Director of DIFP at that time, entered an Order Refusing to Renew. On that same date, July 29, 2016, Kevin Davidson, an investigator with DIFP, sent letters to Robison's agent-employees and possibly others stating that "effective immediately," Robison was no longer authorized to conduct general bail bond business in the State of Missouri. Believing this letter effectively revoked his license, Robison stopped conducting bail bond business in Missouri on July 29, 2016.

Robison unsuccessfully challenged the nonrenewal of his license in Missouri state court, with the Missouri Supreme Court rendering final disposition in June 2018. Robison then filed this four-count action in this Court raising constitutional

challenges to both the nonrenewal and the revocation of his license. He names the DIFP and several of its current and former employees as defendants, namely John Huff, Former Director of DIFP; Chlora Lindley-Myers, Current Director of DIFP; Carrie Couch, Director of Consumer Affairs; Mary Johnson, Manager of Investigations; Kevin Davidson, Investigator; John F. Rehagen, Former Acting Director of DIFP; and Jane Doe, Agent. All individual defendants are sued in their official and individual capacities.

In Count 1 of his complaint, Robison claims that defendants Huff, Lindley-Myers, Couch, Davidson, and Doe's revocation of and failure to renew his general bail bond agent's license violated his constitutional right to procedural due process. Robison brings this same due process claim against the DIFP in Count 2. Robison brings Count 3 against all defendants, claiming that their revocation of and failure to renew his license violated his constitutional right to equal protection under the law. Finally, Robison claims in Count 4 that the DIFP is liable for the individual defendants' conduct under the theory of *respondeat superior*. Robison seeks both monetary and injunctive relief.

Defendants move for summary judgment on all of Robison's claims.

## Legal Standard

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). I must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. *Scott v. Harris,* 550 U.S. 372, 379 (2007).

## Discussion

A.  Sovereign Immunity: DIFP and Official-Capacity Claims

Except for statutory and common-law exceptions, sovereign immunity bars *all* suits against state agencies, including suits for prospective equitable relief. *Church v. Missouri*, 913 F.3d 736, 743 (8th Cir. 2019); *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). Robison does not identify any statutory or common-law exception here. Nor am I aware of any. Accordingly, sovereign immunity bars Robison's claims against DIFP.

Robison's claim for *respondeat superior* liability against DIFP also fails. *See Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (no vicarious liability under § 1983 because government officials are liable for only their own misconduct). To the extent Robison attempts to impose liability under a custom, policy, or practice theory (*see* ECF 1 at p. 4), he fails to identify any DIFP policy that allegedly led to his injury and, further, fails to allege how such policy violated

his constitutional rights.[1]  Robison therefore fails to state a claim against DIFP under this theory as a matter of law.  *See Rodgers v. Univ. of Missouri Bd. of Curators*, 56 F. Supp. 3d 1037, 1048, 1054 (E.D. Mo. 2014).

To the extent Robison names the individual defendants in their official capacities, the State's sovereign immunity bars his claim for money damages against them.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (official-capacity suits are actions against the state agency of which the officer is an agent); *Serna v. Goodno*, 567 F.3d 944, 952 (8th Cir. 2009) (Eleventh Amendment bars damages claims against the states); *Rodgers*, 56 F. Supp. 3d at 1049-50 (official-capacity suits barred by sovereign immunity).  Although actions for prospective injunctive relief are permissible against individual state officers in their official capacities, *see Graham*, 473 U.S. at 169 n.18; *Church*, 913 F.3d at 744; *Thrivent Fin. for Lutherans v. Lakin*, 322 F. Supp. 2d 1017, 1020 (W.D. Mo. 2004), Robison seeks injunctive relief against only the DIFP.  Accordingly, the individual defendants are entitled to summary judgment to the extent Robison's claims are brought against them in their official capacities.

B.    Equal Protection

Robison does not claim membership in a protected class or group, so his

---

[1] Indeed, elsewhere in his complaint, Robison avers that there was no such policy or practice to revoke or refuse renewal of a bond agent's license on the basis claimed here, that is, "premature" unsatisfied forfeitures or judgments.  (ECF at ¶ 49.)

- 5 -

equal protection claim arises under the "class of one" theory, which requires him to establish that he was intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *Robbins v. Becker*, 794 F.3d 988, 995 (8th Cir. 2015).

The "threshold inquiry" in a class-of-one equal protection claim is whether the plaintiff is similarly situated to others who allegedly received preferential treatment. *Robbins*, 794 F.3d at 996; *Domina v. Van Pelt,* 235 F.3d 1091, 1099 (8th Cir. 2000). Absent this threshold showing, a plaintiff does not have a viable equal protection claim. *Robbins*, 794 F.3d at 996; *Klinger v. Department of Corr.,* 31 F.3d 727, 731 (8th Cir. 1994). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." *Robbins*, 794 F.3d at 996 (internal quotation marks and citations omitted).

If a class-of-one plaintiff shows that he was similarly situated to another and that a state officer's unlawful administration of a state statute resulted in its unequal application between them, he must also show that "'an element of intentional or purposeful discrimination'" was present in the unequal treatment. *Batra v. Board of Regents of Univ. of Nebraska*, 79 F.3d 717, 721 (8th Cir. 1996)

(quoting *Snowden v. Hughes*, 321 U.S. 1, 8 (1944)). Without this element of intentional discrimination, there is no denial of equal protection. *Id.*

Robison claims that the manner by which DIFP pursued an internal complaint, revoked his license, and refused his professional license differed from treatment given to three other bond agents, namely David Everingham, Stewart Stillman, and Kristen Goodwin; and that such different treatment was "irrational, arbitrar[y], capricious, and otherwise unreasonable." (ECF 1 at ¶ 54.)

With respect to Stillman and Goodwin, Robison alleges that defendants did not revoke their licenses despite their having criminal convictions. Defendants have produced evidence that neither Stillman nor Goodwin held licenses as general bond agents, which is Robison's license at issue here, and that the basis for nonrenewal of Robison's license (forfeiture judgments) differed from the allegations Robison makes against Stillman and Goodwin (criminal convictions).

Similar to having an unsatisfied forfeiture judgment, a criminal conviction is a disqualifying event to holding a bond agent license under Mo. Rev. Stat. § 374.755.1(6) given that it constitutes a violation of the laws of Missouri. And, while Missouri Supreme Court Rule 33.17(f) states that a person cannot be accepted as surety on a bail bond if that person has outstanding forfeitures or unsatisfied judgments thereon, Rule 33.17(c) imposes the same bar on persons who have a felony criminal conviction within the past fifteen (15) years or any other

conviction involving moral turpitude. Notably, there is no evidence before the Court showing whether either Stillman or Goodwin has any convictions or whether such convictions are disqualifying under the rule. With Robison's unrebutted allegations of such convictions, it appears from the face of his complaint that he has adequately alleged being similarly situated to Stillman and Goodwin in that they all had a disqualifying event to holding a license.

Regardless, as argued by defendants, even if Robison was similarly situated to Stillman and Goodman, he nevertheless does not allege in his complaint or present any evidence in response to the summary judgment motion that defendants *intentionally* treated him differently. Without such allegation, "virtually every negligent governmental action could be converted into an equal protection violation." *Batra*, 79 F.3d at 721. "Thus, courts have consistently required equal protection plaintiffs to allege and prove something more than different treatment by government officials." *Id.* Robison makes no such allegation here. Therefore, to the extent Robison claims that defendants violated his right to equal protection on the basis of unequal treatment accorded Stillman and Goodwin, the claim fails.

As to different treatment allegedly given Everingham, defendant Davidson attests that, as an investigator at DIFP, he was not aware of any unresolved bail bond forfeiture judgments against Everingham as a licensed general bail bond agent, and he was not aware of any instance where a general bail bond agent was

granted renewal of his/her general bail bond agent license if that agent had unresolved bail bond forfeiture judgments of which DIFP was aware. (ECF 23-17.) Although Robison makes no argument against Davidson's attestation, he submits three letters from Davidson to Everingham – all dated October 23, 2019 – informing Everingham of three bond forfeitures arising out of the Sunset Hills municipal court.² (ECF 31-1.) Notably, these letters address only bond forfeitures and not bond forfeiture <u>judgments</u>. There is a difference. *State v. Michael R. Thomas Bail Bond Co.*, 367 S.W.3d 632 (Mo. Ct. App. 2012).

Other than Davidson's letters to Everingham dated more than three years after the incidents alleged in the complaint, Robison presents no argument or evidence showing that Everingham was similarly situated to him when his license was allegedly revoked and not renewed in 2016, that is, that Everingham sought renewal of his general bail bond agent license, had outstanding bond forfeiture <u>judgments</u> (and not just bond forfeitures), and had his license renewed and not revoked despite such outstanding judgments. Regardless, I am aware of no authority, and Robison provides none, that permits an individual's discrete equal protection claim to proceed only on conduct that occurred years *after* the alleged occurrences that gave rise to that individual's claim asserted in the complaint. *Cf. EEOC v. Riss Int'l Corp.*, 525 F. Supp. 1094, 1100-01 (W.D. Mo. 1981) (post-

---

² Davidson's affidavit is dated October 9, 2019 – two weeks before these letters.

complaint conduct has little relevance to complainant's individual claim of mistreatment). Further, as with his claims regarding Stillman and Goodwin, Robison makes no allegation of *intentional* discrimination here.

The individual defendants are entitled to judgment as a matter of law on Robison's claim that the internal complaint, revocation, and refusal to license that occurred in July and August 2016 violated his right to equal protection.[3]

C.   Due Process – Failure to Renew License

*Qualified Immunity*

The individual defendants contend that they are entitled to qualified immunity on Robison's claim that they are liable in their individual capacities for violating his right to due process as to the nonrenewal of his license. I agree.

A qualified-immunity analysis involves a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Smith v. City of Minneapolis*, 754 F.3d 541, 545 (8th Cir. 2014). Either prong may be addressed first. *Pearson*, 555 U.S. at 236. Here, the "clearly established" prong is dispositive.

"A right is clearly established if its contours are sufficiently clear that a

---

[3] Because Robison names defendant Rehagen in only this equal protection claim, judgment for defendants on this claim results in Rehagen being dismissed from this action.

reasonable official would understand that what he is doing violates that right." *Smith*, 754 F.3d at 546 (internal citation and quotation marks omitted). A case directly on point is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

In *Austell v. Sprenger*, 690 F.3d 929 (8th Cir. 2012), the Eighth Circuit recognized that a licensed entity may have a property interest in an existing valid license, "which may not 'be impaired, suspended, or revoked' without due process." *Id.* at 935 (quoting *Missouri Real Estate Comm'n v. Rayford,* 307 S.W.3d 686, 692 (Mo. Ct. App. 2010)). The Eighth Circuit noted, however, that the law was less clear as to license *renewal* proceedings. *Id.*

Property interests are not created by the Constitution but rather stem from an independent source such as state law. *Stauch v. City of Columbia Heights*, 212 F.3d 425, 429 (8th Cir. 2000). A property interest arises when state law creates "expectations that are 'justifiable,'" *Austell*, 690 F.3d at 935 (quoting *O'Bannon v. Town Ct. Nursing Ctr.,* 447 U.S. 773, 796 (1980)), such as by establishing procedural requirements that impose substantive limitations on the exercise of official discretion. *Stauch*, 212 F.3d at 429; *Movers Warehouse, Inc. v. City of Little Canada*, 71 F.3d 716, 719 (8th Cir. 1995). But no property interest arises where the statutory claim to a benefit is "too ephemeral and insubstantial." *Austell*,
- 11 -

690 F.3d at 935 (internal quotation marks and citations omitted). Accordingly, to establish a property interest in the renewal of his general bail bond license, Robison must show more than a unilateral expectation of it – he must possess a legitimate claim of entitlement to it. *Id.*

By statute, the DIFP enjoys substantial discretion in determining whether to grant or deny renewal of a general bail bond agent's license. *See* Mo. Rev. Stat. §§ 374.750, 374.755; *see also State ex rel. Robison v. Lindley-Myers*, 551 S.W.3d 468, 472 (Mo. banc 2018). *Cf. Stauch*, 212 F.3d at 430 (property interest in license renewal existed where applicant needed only to meet three objective criteria and city code gave no indication that city could still use discretion to deny renewal). With such discretion granted to the DIFP, Robison had nothing more than a unilateral expectation that his license would be renewed, rather than a legitimate claim of entitlement. *See Movers Warehouse, Inc.*, 71 F.3d at 718-19; *see also Austell*, 690 F.3d at 935-36. And because Robison does not cite to any state authority clearly establishing that licensed general bail bond agents have a property interest in license renewal, it cannot be said that Robison had a constitutionally cognizable property interest in the renewal of his general bail bond agent license.

In view of the less-than-clear law governing whether a licensee has a property interest in license renewal as stated in *Austell*, and the discretionary authority granted by state law to the DIFP regarding license renewal, the individual

defendants here reasonably could have concluded that Robison had no constitutionally protected property interest in the renewal of his general bail bond license. Robison has not presented any new Missouri or Eighth Circuit case, and I am aware of none, holding that licensees have a constitutionally protected property interest in license renewal where the licensor retains substantial discretion in refusing renewal. The individual defendants are therefore protected by qualified immunity to the extent Robison claims that the manner by which they failed to renew his license denied him his right to due process.

D. Due Process – Revocation of License

"Professional licenses are 'property' for the purposes of the Fourteenth Amendment to the United States Constitution; consequently, procedural due process is required before the government may deprive anyone of his or her professional license." *Garozzo v. Missouri Dep't of Ins., Fin. Insts. & Prof'l Registration, Div. of Fin.*, 389 S.W.3d 660, 667 (Mo. banc 2013). Accordingly, an existing valid license may not "be impaired, suspended, or revoked" without due process. *Rayford,* 307 S.W.3d at 692. *See also Kloch v. Kohl*, 545 F.3d 603, 607 (8th Cir. 2008) (where a state has established a licensing system for regulation of professionals, a license may not be revoked without affording the accused procedural due process) (citing *Marler v. Missouri State Bd. of Optometry,* 102 F.3d 1453, 1456 (8th Cir. 1996)); *ARO Sys. v. Supervisor of Liquor Control,* 684

S.W.2d 504, 507 (Mo. Ct. App. 1984) (sanctions impairing the licensed entity's use of a valid liquor license implicate due process protections); *Crum v. Missouri Dir. of Revenue,* 455 F. Supp. 2d 978, 986 (W.D. Mo. 2006) (revocation of a physician's license implicated due process protections).

Before depriving a citizen of a property right, the property owner must be given notice and an appropriate opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434 (1982) ("To put it as plainly as possible, the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement."). The right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Fuentes v. Shevin,* 407 U.S. 67, 80 (1972).

The parties do not dispute that due process requires notice and opportunity to be heard before revocation of a general bail bond license. And there is no dispute that neither the DIFP nor its employees gave Robison notice before issuing Davidson's July 29, 2016, letter or an opportunity to be heard on the substance of the letter. Defendants argue that notice and hearing were not required because the letter did not revoke Robison's license. Robison contends that the letter's affirmative statement that he lacked authority to conduct bail bond business "effective immediately" operated as a revocation given that his license was not set

to expire until August 8. For the following reasons, this is a plausible construction of the letter.

> Davidson's July 29 letter to Robison's bond agent-employees states:
>
> Effectively immediately, Bryan Robison is no longer authorized to conduct general bail bond business in the State of Missouri. Therefore, you are no longer able to write a power of attorney under the authority of Bryan Robison.
>
> . . . You may not write bail bonds until you have notified this office of the name of your new general bail bond agent.

(ECF 30-2.) While the letter did not use any derivative of the word "revoke," the "effective immediately" language could lead a reasonable person to believe that Robison could not conduct business under his license as of that date, July 29, 2016. While Robison did not directly receive the letter himself, his father and several of his agent-employees did and informed him of its contents. Robison understood from the letter's language that his license was revoked, and he stopped writing bonds as of July 29, 2016, which was ten days before his license was set to expire. (ECF 30-3, B. Robison Affid.)

Although defendant Davidson's signature appears on the July 29 letter, he attests in his October 9, 2019, affidavit that he was not involved in any way with Robison's license renewal:

> Because I began my tenure as a Special Investigator with the Department on July 16, 2016, and because the Director of the Department issued the "Order Refusing to Renew General Bail Bond Agent License" as to Robison on July 29, 2016, thirteen days after I

became employed as a Special Investigator, I was not assigned to
investigate Robison or his case. I had no involvement in the review of
Robison's application to renew his bail bond license, any investigation
pertaining to that application, or any decision as to whether or not said
license should or should not be renewed.

(ECF 23-17, Davidson 10/9/19 Affid.) However, upon being presented with his July 29 letter, Davidson attests in a later affidavit, dated November 19, 2019, that:

on July 29, 2016, I sent letters to each of the twenty-three (23) bail
bond agents who indicated to the Department that Bryan Travis
Robison was their general bail bond agent under whose authority they
were writing bonds. . . . These letters explained that since the Director
did not renew Robison's general bail bond license, these bail bond
agents could no longer write under the authority of Bryan Travis
Robison, because Bryan Travis Robison no longer had that authority.

(ECF 36-2, Davidson 11/19/19 Affid.) A review of the letter, however, shows that there is no "explanation" that Robison's license was not or would not be renewed. And it clearly states that Robison's lack of authority in the bail bond business was "effectively immediately," despite Robison holding an existing valid license that was not set to expire until August 8, 2016.

Accordingly, there remain genuine issues of material fact as to whether the DIFP letter signed by Davidson on July 29, 2016, revoked Robison's license and thus whether Robison was entitled to notice and an opportunity to be heard prior to issuance of the letter. Defendants' motion for summary judgment on this claim is denied.

E. <u>Jane Doe</u>

In their motion for summary judgment, defendants request in a footnote that Jane Doe "be removed as a named Defendant" since Robison has failed to identify her and the time to amend pleadings has passed. (ECF 23-1 at p.1 n.1.) Jane Doe answered Robison's complaint, however, and counsel entered on her behalf. (ECF 12, 17.) I will therefore deny defendants' footnoted request to simply "remove" Doe at this time, but without prejudice to renewing their request at trial. However, because my summary judgment rulings in this memorandum are determined as a matter of law, they apply with equal force to defendant Doe.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment [23] is **GRANTED in part and DENIED in part** as follows:

- Defendant Department of Insurance, Financial Institutions and Professional Registration, shall have judgment against plaintiff on Counts 2, 3, and 4 of the complaint, and defendant Department of Insurance, Financial Institutions and Professional Registration, is dismissed from this action with prejudice;

- Defendants John Huff, Chlora Lindley-Myers, Carrie Couch, Mary Johnson, Kevin Davidson, John F. Rehagen, and Jane Doe shall have judgment against plaintiff on Count 3 of the complaint, and Count 3 of the complaint is hereby dismissed with prejudice. As a result of this dismissal, defendant John F. Rehagen is dismissed from this action with prejudice;

- Defendants John Huff, Chlora Lindley-Myers, Carrie Couch, Mary Johnson, Kevin Davidson, and Jane Doe shall have judgment against plaintiff on Count 1 of the complaint to the extent the claims are brought against these defendants in their official capacities;

- Defendants John Huff, Chlora Lindley-Myers, Carrie Couch, Mary Johnson, Kevin Davidson, and Jane Doe are entitled to qualified immunity on plaintiff's claim in Count 1 of the complaint that their failure to renew his license violated his right to due process, and said claim is dismissed with prejudice;

- Defendants John Huff, Chlora Lindley-Myers, Carrie Couch, Mary Johnson, Kevin Davidson, and Jane Doe are denied summary judgment on plaintiff's claim in Count 1 of the complaint that their revocation of his license violated his right to due process. This claim is all that remains for trial.

**IT IS FURTHER ORDERED** that this action is set for **JURY** trial on **Monday, April 6, 2020** on plaintiff's claim that defendants John Huff, Chlora Lindley-Myers, Carrie Couch, Mary Johnson, Kevin Davidson, and Jane Doe denied him due process in the revocation of his general bail bond agent's license. A separate Amended Order Relating to Trial is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 4th day of February, 2020.