UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRYAN TRAVIS ROBISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-cv-1527-MTS |
| ) | |
| DEPARTMENT OF INSURANCE, ) | |
| FINANCIAL INSTITUTION AND ) | |
| PROFESSIONAL REGISTRATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment, Doc. [156]. The sole remaining claim in this case is asserted under 42 U.S.C § 1983, Doc. [129], against Defendants John Huff, Carrie Couch, Mary Johnson, Kevin Davidson, and Karen Crutchfield (collectively, "Defendants") based on allegations that while working at the Department of Insurance, Financial Institutions and Professional Registration ("DIFP"), Defendants revoked Plaintiff's professional license without due process. For the reasons set forth below, the Court denies Plaintiff's Motion.

**I.   BACKGROUND**

Plaintiff Bryan Robison held a license as a general bail bond agent that was set to expire on August 8, 2016. As a general bail bond agent, Plaintiff was able to employ dozens of Missourians as bail bond agents who worked under his authority to write "powers of attorney" for criminal defendants granted bond within the state. Two bond forfeiture judgments were entered against Plaintiff on March 24, 2016 and April 1, 2016.[1] *See* Doc. [156-20]; Doc. [156-21]. On or

---

[1] A *bond forfeiture* here refers to when a bail bond agent assumes liability for a criminal defendant, ensuring that the defendant does not "breach a condition of the bond," such as failing to appear in court. *See* Mo. Sup. Ct. r. 33.14. If

1

about April 8, 2016, Plaintiff sent sworn affidavits to DIFP stating he had two unsatisfied judgments against him.[2]  Doc. [156-19] at 5.  Plaintiff attested to the same in May, June, and July 2016 affidavits.  *Id.* at 6–8.

DIFP posts two lists: (1) the Qualified General Bail Bond Agent list ("Qualified List") and (2) the Licensed Bail Bond and General Bail Bond Agent list.  These lists are separate and updated weekly.  Plaintiff appeared on the Qualified List on April 15, 2016; April 22, 2016; April 29, 2016; and May 6, 2016.  Plaintiff was removed from the Qualified List on May 13, 2016; May 20, 2016; May 26, 2016; June 12, 2016; and June 17, 2016.

In mid-June, Plaintiff learned from one of his agent-employees that he was removed from the Qualified List.  In other words, Plaintiff no longer was authorized to write bonds in the State of Missouri under his license.  According to Plaintiff, he then called employees at DIFP to speak about his license.  Plaintiff reappeared back on DIFP's Qualified List starting June 24, 2016.  A call log note dated June 29, 2016, between a Pemiscot County clerk and Defendant Johnson, the Manager of Investigations with DIFP, noted Plaintiff's status as qualified bail bond agent.  A June 30, 2016, email from Defendant Couch, the Director of Consumer Affairs Division of DIFP, to Defendant Huff, the Director of DIFP states:

> 3. Bryan Robison—General Bail Bond Agent has unsatisfied bail bond judgments and was removed from the qualified list because of the unsatisfied judgments (which were past appeal time). He called late last week and argued that he shouldn't be removed until the judgments are 6 months old, based on his interpretation of Section 374.763, RSMo. I agreed to place him back on the qualified list while we review the issue again to make sure we are proceeding as required or allowed under the law.

---

the criminal defendant fails to appear in court, a judge will declare a forfeiture of the bond against the bail bond agent, which, after notice and a hearing, becomes a forfeiture judgment.  *Id.*; *see also State v. Michael R. Thomas Bail Bond Co.*, 367 S.W.3d 632, 634 (Mo. Ct. App. 2012) (explaining the court completes the bond forfeiture process by entering a final judgment of bond forfeiture and once judgment is final, the bail bond agent is obligated to satisfy the judgment).

[2] Pursuant to Mo. Rev. Stat. § 374.760, general bail bond agents are required to file sworn affidavits with DIFP monthly indicating whether they have any unsatisfied judgments against them.

2

Doc. [156-25].

In July 2016, Plaintiff submitted his application to renew his general bail bond agent license and Defendant Crutchfield, an Investigator with DIFP, was assigned to investigate Plaintiff's renewal application.[3] After the investigation, Defendant Crutchfield submitted her report (the "Report") to DIFP's legal section on July 28, 2016 recommending refusal of renewal because Plaintiff did not meet the qualifications for surety on bail bonds since he had outstanding bond forfeiture judgments against him in Missouri. *See* Doc. [156-17]. On July 29, 2016, Defendant Huff signed an Order Refusing to Renew General Bail Bond Agent License (the "Order"). Doc. [156-26]. The Order specifically stated that Plaintiff was disqualified from licensure as a general bail bond agent because he failed to meet the qualifications as a surety as set forth in Missouri Supreme Court Rule 33.17(f) due to his admissions of having $16,000.00 of unsatisfied judgments on four bail bonds during April, May, June, and July of 2016.

Also, on July 29, 2016, Defendant Davidson, an Investigator with the DIFP, sent twenty-three letters to Plaintiff's bond agent-employees, that state, in pertinent part:

> Effectively immediately, [Plaintiff] is no longer authorized to conduct general bail bond business in the State of Missouri. Therefore, you are no longer able to write a power of attorney under the authority of [Plaintiff]. . . . You may not write bail bonds until you have notified this office of the name of your new general bail bond agent.

Doc. [156-14]. On the same day, DIFP issued its weekly lists; Plaintiff was removed from the Qualified List but named on the Licensed General Bail and Bail Bond Agent List. Doc. [160-8] at 146. According to Plaintiff, he understood the language of Davidson's July 29th letter to mean that his license was revoked, and he ceased writing bonds and also authorizing bonds written by his agent-employees as of July 29, 2016, which was ten days before his license was set to expire.

---

[3] All general bail bond agent license renewal applications are given to Investigations for review. Doc. [160-20] ¶ 4.

3

Based on these facts, Plaintiff asserts that Defendants prematurely revoked his professional license without due process.

## II. LEGAL STANDARD

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007).

## III. DISCUSSION

Plaintiff argues that Defendants prematurely revoked his professional license without due process in two circumstances: first, when Plaintiff was removed from the Qualified General Bail Bond Agents list without notice and an opportunity to be heard, and second, when Defendant Davidson sent a letter on July 29, 2016 ("the Letter") to several bail bond agents writing that Plaintiff was no longer authorized to write bonds in the state of Missouri before his license expired.

   1. *The Letter*

First, Plaintiff argues that the undisputed facts show the Letter revoked his license. If true, due process required notice and an opportunity to be heard before revocation of Plaintiff's license,[4] and it is undisputed that Plaintiff was not given notice or an opportunity to be heard prior to

---

[4] Due process requires notice and an opportunity to be heard before *revocation* of a professional license, such as Plaintiff's. *See Robison v. Dep't of Ins., Fin. Institutions & Pro. Registration*, 437 F. Supp. 3d 725, 733 (E.D. Mo. 2020); *Garozzo v. Missouri Dep't of Ins., Fin. Insts. & Prof'l Registration, Div. of Fin.*, 389 S.W.3d 660, 667 (Mo. banc 2013).

4

issuance of the Letter.[5]  Clearly then, whether the Letter revoked Plaintiff's license is a "material fact." Fed. R. Civ. P. 56(a).  However, whether the Letter did in fact "revoke" Plaintiff's general bail bond license is disputed because "while the letter did not use any derivative of the word 'revoke,' the 'effective immediately' language could lead a reasonable person to believe that [Plaintiff] could not conduct business under his license as of that date, July 29, 2016." *Robison v. Dep't of Ins., Fin. Institutions & Pro. Registration*, 437 F. Supp. 3d 725, 734 (E.D. Mo. 2020); Doc. [52] at 15.  Therefore, summary judgment is not appropriate here. *Anderson*, 477 U.S. 242, 248 (1986) (explaining "disputes over facts that might affect the outcome" will properly preclude summary judgment).

Although the Court has already concluded summary judgment is not warranted based on a disputed reading of the Letter, the Court finds it necessary also to discuss why summary judgment is similarly not proper here based on Plaintiff's interpretation of the law.

Plaintiff points to Mo. Rev. Stat. § 374.763.1 and argues Defendants prematurely revoked his license and violated statutory law because six months did not elapse between the March/April 2016 forfeiture judgments entered against him and the issuance of: (1) Defendant Crutchfield's Report issued on July 28, 2016, (2) Defendant Huff's Order refusing to renew issued on July 29, 2016, and (3) the Letter issued on July 29, 2016.  Plaintiff argues Defendants failed to honor the six-month "grace period" following forfeiture judgments pursuant to § 374.763.1.  The statute states:

> If any *final judgment ordering forfeiture* of a defendant's bond is not paid within *a six-month period of time*, the *court* shall extend the judgment date or *notify [DIFP]* of the failure to satisfy such judgment. The director shall draw upon the assets of the surety, remit the sum to the court, and obtain a receipt of such sum from the court. The director may take *action* as provided by section 374.755, regarding the license of the surety and any bail bond agents writing upon the surety's liability.

---

[5] Defendants argue that notice and hearing were not required because the Letter did not revoke Plaintiff's license.

5

Mo. Rev. Stat. § 374.763.1 (emphasis added).  Essentially, the statute "instructs a court as to what action it must take if a surety fails to pay a forfeited bond within six months of final judgment." *State v. Michael R. Thomas Bail Bond Co.*, 408 S.W.3d 794, 796 (Mo. Ct. App. 2013) (quoting *State v. Michael R. Thomas Bail Bond Co.*, 367 S.W.3d 632, 635 (Mo. Ct. App. 2012)).  In such cases, once a *final judgment* has been *unsatisfied* for *six months*, Missouri judges have one of two options: (1) extend the judgment date,[6] effectively providing the bail bond agent with more time to locate the absconded defendant, or (2) notify DIFP of the failure to satisfy such judgment.  *Id.*  Then, after said notice from the court is received by DIFP, can DIFP remit the payment from the bail bond agent's assets.  Further, DIFP is permitted to take disciplinary action against the bail bondsman based on his failure to timely remit the forfeiture, pursuant to Mo. Rev. Stat. § 374.755, such as filing a complaint against a licensee, which can suspend or revoke his license.[7]  In other words, the "purpose and plain meaning of section 374.763 is to instruct the court on collecting from a surety after forfeiture" and to incentivize the bail bond agent to "timely remit the forfeiture or risk discipline."  *Michael R.*, 367 S.W.3d at 635–36.

Plaintiff reads § 374.763.1 to mean that he would have at least six months starting from March/April 2016—when the two forfeitures judgments were ordered—until DIFP could "take action against him" based on those judgments.  Based on his interpretation of the statute, Plaintiff argues that the Report, the Order, and the Letter—all based on the fact that Plaintiff had forfeiture

---

[6] Notably, even if a court extends the judgment date, the judgment is still in effect and the extension "does not erase the final judgment or obligations owed thereon."  *State v. Michael R. Thomas Bail Bond Co.*, 408 S.W.3d 794, 796 (Mo. Ct. App. 2013).

[7] This point is further illustrated by an email sent by Defendant Crutchfield: "in Missouri, we have six months after a judgment until we (the [DIFP]) seize the CD of a general bail bond agent and remit the sum of the judgment to the court . . . [h]owever, once a court sends us paperwork, it's still an unsatisfied judgment; we don't just seize assets until six months is up."  Doc. [156-18] at 13.

6

judgments—are improper because six months had not yet elapsed before their issuance, and thus, Defendants prematurely revoked his license by law.

**The Letter**.  Regarding the Letter, Plaintiff misinterprets the applicability of § 374.763.1. Plaintiff conflates the ability to have a license as a bail bond agent to the ability to write a bond.[8] Section 374.763.1 concerns what *courts* must do before DIFP can remit the assets of a bail bond agent and subsequently take disciplinary action, such as revocation of the license, against the bondsman after *failing to satisfy* the forfeiture judgment.  On the other hand, Missouri law makes clear that whether bail bond agents are "qualified" to "write bail upon a surety's liability" in Missouri is provided "in rules promulgated by the supreme court of Missouri and not by any circuit court rule."  Mo. Rev. Stat. § 374.763.3.  As an example, Missouri Supreme Court Rule 33.17 explains that a "person shall not be accepted as a surety on any bail bond unless" the person has "no outstanding forfeiture *or* unsatisfied judgments thereon entered upon any bail bond."[9]  Mo. Sup. Ct. r. 33.17(f).  In other words, whether Plaintiff was qualified to write bonds, or could authorize his agent-employees to sign off on bonds, depends on if he met the qualifications set by the Supreme Court of Missouri, such as Rule 33.17, and *not* by any ruling of a court, as contemplated in § 374.763.1.

Further, the disqualifying language in Rule 33.17 is important: a bondsman is disqualified

---

[8] Under Missouri law, a bail bond agent can perform other duties than surety, such as recovering a fugitive. *See* Mo. Rev. Stat. § 374.783.  This is especially important here because the forfeiture judgments entered against Plaintiff are due to a defendant missing bail which Plaintiff is personally liable for.  Thus, Plaintiff's license would still allow him to find the absconded defendant.

[9] This distinction is important; an "outstanding forfeiture" is different than an "unsatisfied judgment."  Importantly, here, Mo. Rev. Stat. § 374.763.1 will only be implicated when there is a judgment, but a bondsman will be disqualified from making further bonds when a *forfeiture* has been entered upon a recognizance to which he is a party, even if there has not yet been a judgment. *See* Mo. Sup. Ct. r. 33.17.  "Upon declaring a forfeiture of the bond, the court shall set a hearing on the matter to determine whether the forfeiture should be set aside or a judgment of forfeiture entered." *See* Mo. Sup. Ct. r. 33.14.

from making further bonds if he has an "outstanding forfeiture" *or* an "unsatisfied judgment."[10] Importantly, here, § 374.763.1 is *only* implicated when there is a *judgment*, but a bondsman is *disqualified* from writing bonds based on a *forfeiture*, *even if the forfeiture has not yet become a judgment*. *See* Mo. Sup. Ct. r. 33.17; *see also* Mo. Sup. Ct. r. 33.14(a) ("upon declaring a forfeiture of the bond, the court shall set a hearing on the matter to determine whether the forfeiture should be set aside or a judgment of forfeiture entered."). Thus, Plaintiff's qualifications to write and authorize bonds are plainly inapposite of § 374.763.1, which governs satisfaction of a disqualifying judgment. To construe § 374.763 as Plaintiff "desires would lessen a surety's incentive to produce defendants prior to a judgment of forfeiture and would obliterate any incentive for the surety to timely remit a forfeited bond." *Michael R.*, 367 S.W.3d at 636.[11]

As applied to the facts here, during the relevant period, Plaintiff had two unsatisfied forfeiture judgments against him. Under Missouri law, this undisputed fact means two things. First, Plaintiff was not qualified to write or authorize bonds in Missouri. *See* Mo. Sup. Ct. r. 33.17(f), 33.18. Second, Plaintiff had *six months* to *satisfy* the judgments *before* the court demanded payment and DIFP could potentially suspend or revoke his license on that basis. Mo. Rev. Stat. § 374.763.1. Thus, Plaintiff cannot point to § 374.763.1 as a basis to prove the Letter prematurely revoked his license as a matter of law because the six-month "grace period" to satisfy a judgment is not related to his disqualification of writing bonds.[12]

---

[10] Plaintiff attempts to argue that only a forfeiture *judgment* is disqualifying. This argument is especially remarkable given that Plaintiff's *own exhibits* show that *judgments* were entered on both cases. *See* Doc. [156-20] ("Judgment and Order For Forfeiture of Surety Bond" entered on March 24, 2016.) *and* Doc. [156-21] *(*"Judgment of Bond Forfeiture" entered April 1, 2016).

[11] Rather, a surety has an incentive to find and produce a defendant to avoid forfeiture, *even if the forfeiture has not yet become a judgment*. *Michael R.*, 367 S.W.3d at 636.

[12] The Letter states, "effectively immediately" Plaintiff is "no longer authorized to conduct general bail bond business in the State of Missouri." As a matter of law, there will be no actual damages if the Letter is found to inform Plaintiff's

**The Report and the Order.**  Regarding the Report and the Order—which both concern refusal to renew—Plaintiff appears to confuse the application of Mo. Rev. Stat. § 374.763.1 with Mo. Rev. Stat. § 374.750.  Of the many differences between the two statutes, the most basic difference is that § 374.763.1 explains the process within the courts that must occur before DIFP can take disciplinary action against a bail bond agent's license based on unsatisfied judgments, and § 374.750 deals with DIFP's decision to renew a license.[13]  Nonetheless, Plaintiff contends the Report[14] and the Order violated § 374.763.1's six-month provision.  Specifically, Plaintiff argues the forfeiture judgments should not have been a factor in the Report or the Order since, according to Plaintiff's interpretation, he had six months to resolve those actions.  Yet, the Supreme Court of Missouri has *already decided* in a previous opinion *issued against Plaintiff* that Defendants properly refused to renew Plaintiff's license on this basis.  *See State ex rel. Robison v. Lindley-Myers*, 551 S.W.3d 468, 474 (Mo. banc 2018).  In *Robison*, the Supreme Court of Missouri explained that when a general bail bond agent seeks license renewal, the director may refuse to renew the license, pursuant to § 374.750, for various reasons listed in § 374.755, and one such reason is that the person has "outstanding forfeiture or unsatisfied judgment thereon entered upon any bail bond in any court of this state."  *Robison*, 551 S.W.3d at 474 (quoting Mo. Sup. Ct. r.

---

agent-employees that Plaintiff was no longer qualified to write bonds under the law; rather, premature revocation will be found if that language is found to "revoke" his *license* by prohibiting Plaintiff from other duties as a bail bondsman.

[13] In pertinent part, Mo. Rev. Stat. § 374.750 states that DIFP "may refuse to issue or renew any license" for "any one or any combination of causes stated in section 374.755." Indeed, § 374.763.1 and § 374.750 both implicate § 374.755. However, § 374.750 states that DIFP "may refuse to issue or renew any license" based on "causes" set forth in § 374.755—one such cause is having outstanding forfeiture or unsatisfied judgments—while § 374.763.1 governs when DIFP can "suspend or revoke the license," pursuant to § 374.755, based on one cause—notice of a final forfeiture judgment pursuant to § 374.763.1. Thus, although both statutes *could* be triggered the same "cause," the statute governing the decision to renew is completely different from the process contemplated in § 374.763.1.

[14] The Court also notes that Plaintiff incorrectly characterizes Defendant Crutchfield's report as an "internal complaint" seemingly in an attempt to bring this renewal issue within the realm of disciplinary action pursuant § 374.755, presumably requiring due process.  "The department may cause a *complaint* to be filed . . . against any holder of any license . . . ." Mo. Rev. Stat. § 374.755.

9

33.17(f)).  As the Supreme Court of Missouri concluded, "[b]ecause Robison has admitted to having outstanding forfeitures and judgments, the director properly exercised her discretion by refusing the renewal request pursuant to her statutory authority and this Court's rules."  *Id.*  Thus, Defendants properly based their refusal to renew Plaintiff's license on the unsatisfied forfeiture judgments, irrespective of any six-month period contemplated in § 374.763.1, and as a matter of law, Plaintiff cannot point to § 374.763.1 as a basis to prove premature revocation via the Report or the Order.  As such, Plaintiff erroneously equates the statute governing refusal to *renew* with the statutory process governing potential license suspension or revocation based solely on unsatisfied judgments.[15]

Finally, the Court finds it necessary to point out *again* that *the issue of license renewal is not an issue remaining in this case*.  The Court dismissed that issue, Doc. [52], and reminded Plaintiff as such when the Court recently denied Defendants' Motion to Dismiss, Doc. [155].[16]  Though Plaintiff's counsel has acknowledged the dismissal of this issue in the Amended Complaint, Doc. [129] at 20, Plaintiff's counsel nonetheless continues to discuss it at length in the current Motion.[17]

---

[15] Section 374.750 states that DIFP "may refuse to issue or renew any license," and § 374.763.1 governs when DIFP can "suspend or revoke the license."  Here, the Report and Order did not suspend or revoke Plaintiff's license, but rather refused to renew his license after Plaintiff filed an application for renewal.  Also of importance is that Plaintiff's name remained on DIFP's list of *licensed* agents even after the Report and the Order were issued.

[16] In a previous Order, the Court specifically told Plaintiff that if Plaintiff improperly attempted to *again* assert liability against Defendants for failure to renew—which Plaintiff is doing in this current Motion—the claim is barred by qualified immunity.  Doc. [155] at 2 n.2.

[17] *See e.g.*, Doc. [156-1] at 12 ("As such, the bond forfeiture judgments should not have been a factor considered by DIFP at the time of the license renewal, since Robison had six months, by Missouri law, to resolve those judgments before said judgment became problematic to DIFP."); *id.* at 13 ("Plaintiff Robison maintains that Defendant Huff lacked sufficient grounds to issue his or-der refusing the renewal of Plaintiff's license"); *id.* at 12–13 ("Defendant Huff refused renewal of Plaintiff's license and instead, DIFP investigators, namely Defendant Crutchfield, and other employees intentionally violated state law by coordinating with an outside entity to fabricate circumstances to justify refusal to renew Robison's license before ultimately revoking his license prior to expiration and without due process.").

2. *The List*

Second, Plaintiff argues he was denied due process when his name was removed from the Qualified General Bail Bond Agents list ("the List") for several weeks in 2016, prior to the expiration of his license.  Specifically, Plaintiff argues that DIFP's failure to give Plaintiff notice and opportunity to be heard before removing his name from the List violated his constitutional right to due process because removal "impaired" his license.  *See Austell v. Sprenger*, 690 F.3d 929, 935 (8th Cir. 2012) (explaining that a licensee may have a property interest in an existing valid license, which may not "be impaired, suspended, or revoked" without due process).  Also, this argument inherently begs the question of whether Plaintiff had a constitutional or statutory right to be on the List.  Under the circumstances here, the Court finds he did not.[18]

The law imposes a continuous duty on DIFP to provide courts a list of qualified bail bond agents.  The applicable statute states, in part:

> The department shall furnish to the presiding judge of each circuit court of this state, on at least a monthly basis, a list of all duly *licensed* and *qualified* bail bond agents and general bail bond agents whose licenses are not subject to pending suspension or revocation proceedings, and *who are not subject to unsatisfied bond forfeiture judgments*.

Mo. Rev. Stat. § 374.763.2 (emphasis added).  In other words, DIFP is mandated to inform Missouri circuit courts at least once a month which general bail bond agents are *licensed* and *qualified*, two terms that encompass different meanings and distinct criteria.

*Licensing* refers to the ability to act as a bail bond agent.[19]  Under Missouri law, a person can act as a bail bond agent only with a license from DIFP.  *See* Mo. Rev. Stat. § 374.710 ("no person . . . shall practice as a bail bond agent or general bail bond agent . . . in Missouri unless and

---

[18] For the same reasons, the Court grants Defendants' Motion for Summary Judgment as to the List.  A separate Opinion will follow.

[19] Plaintiff does not argue any issue with DIFP's list of *licensed* bail bond agents.

11

until the department has issued to him or her a license"); *Id.* § 374.702 (same); *Id.* § 374.700 (defining "bail bond agent" and "general bail bond agent" as both being "licensed"). On the other hand, *qualification* refers to the ability be accepted as surety on a bond, in other words, to write bonds. *See* Mo. Rev. Stat. § 374.763.3 ("All duly licensed and qualified bail bond agents and general bail bond agents shall be qualified, without further requirement, to write bail upon a surety's liability in all courts of this state as provided in rules promulgated by the supreme court of Missouri . . . ."). Missouri law sets specific rules on who may serve as surety on a criminal bond and what qualifications are required. As an example, Missouri Supreme Court Rule 33.17 explains that a "person shall not be accepted as a surety on any bail bond unless" that a person has "no outstanding forfeiture or unsatisfied judgments thereon entered upon any bail bond in any court of this state or of the United States." Mo. Sup. Ct. r. 33.17(f).[20] Here, Plaintiff admits that during the time in question, he had two forfeiture judgments entered against him. Thus, Plaintiff lacked the necessary qualifications to act as a surety, Mo. Sup. Ct. r. 33.17(f), and DIFP was required, by statute, to report his status. Mo. Rev. Stat. § 374.763.2.

Under the circumstances, the Court does not find that removal from the List is a deprivation of a constitutional right. *Cf. Robison*, 551 S.W.3d at 474 (finding no constitutional right to license renewal based on Plaintiff's admission of outstanding forfeitures and judgments). Removal from the List did not "impair" Plaintiff's license. Rather, Plaintiff was statutorily incapable of writing surety bonds[21]—*not* because he was removed from the List, but because he did not meet the

---

[20] Notably, Missouri Supreme Court Rule 33.18 places a similar duty on the person purporting to act as a surety, as it requires the person to attest via affidavit that he was in compliance with Rule 33.17 before any bond could be accepted.

[21] Plaintiff would violate Missouri law if he wrote bonds while having bond forfeiture judgments entered against him. *See* Mo. Sup. Ct. r. 33.17(f), 33.18.

requirements set by Missouri law, notably, based on his *own* doing. The List just happens to reflect that truth.

Further, no property interest ever arose in being on the List itself for many reasons, but namely because Plaintiff's statutory claim is based merely on a "unilateral expectation," rather than "a legitimate claim of entitlement." *Robison*, 437 F. Supp. 3d at 733 (quoting *Austell*, 690 F.3d at 935). Accordingly, the Court finds Plaintiff had no clearly established constitutional right to be on the List as a matter of law.[22] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (explaining qualified immunity protects a government official from liability unless his conduct violated a "clearly established" constitutional or statutory right).

Plaintiff further points to Mo. Rev. Stat. § 374.763.1 to argue removal from the List prematurely revoked his license *as a matter of law* because six months had not elapsed since the entry of judgments against him. Plaintiff again appears to confuse § 374.763.1's applicability, but this time, with respect to Mo. Rev. Stat. § 374.763.2. As the Court already discussed in length, § 374.763.1 describes what the *court* must do *before DIFP* takes action against a bail bond agent based on an unsatisfied judgment. On the other hand, § 374.763.2 imposes a *duty on DIFP* to provide circuit courts a list of qualified bail bond agents, which include bondsmen with no outstanding forfeitures or unsatisfied judgments, see Mo. Sup. Ct. r. 33.17(f).[23] Again, Plaintiff erroneously equates the ability to have a bail bond agent license to the ability to be "qualified" to write a bond. Even more telling, is on *whom* the statutes impose duties. While it is true under § 374.763.1 the court is the *initiator* of communication with DIFP and not vice versa, it is also true

---

[22] Also, notably, Plaintiff does not cite to any state authority clearly establishing that licensed general bail bond agents have a property interest in being on the List renewal, thus "it cannot be said that [Plaintiff] had a constitutionally cognizable property interest in" being on the List. *Robison*, 437 F. Supp. 3d at 733.

[23] Also, the language of Mo. Rev. Stat. § 374.763.2 specifically states that qualified agents on the list must not be subject to *unsatisfied bond forfeiture judgments*.

that under § 374.763.2 DIFP is the *initiator* of communication with the court; the communication being whether a person is qualified to write bonds. Indeed, Missouri law makes clear that whether bail bond agents are "qualified" to write bonds is based on compliance with rules promulgated by the Supreme Court of Missouri and *not* by any circuit court decision. Mo. Rev. Stat. § 374.763.3. In other words, statutory law explicitly prohibits the courts from satisfying § 374.763.2's duty— listing who is qualified to write bail bonds, a status specifically based on Missouri Supreme Court rules and *not* within the power of the courts or DIFP. Thus, the six-month rule in § 374.763.1 does not and cannot implicate § 374.763.2.

## CONCLUSION

The Court finds summary judgment is not appropriate here because genuine disputes of material fact remain, and Plaintiff is not entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment, Doc. [156], is **DENIED**.

Dated this 23rd day of February 2022.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE