**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| BRYAN TRAVIS ROBISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-1527-MTS |
| | ) | |
| DEPARTMENT OF INSURANCE, | ) | |
| FINANCIAL INSTITUTION AND | ) | |
| PROFESSIONAL REGISTRATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants John Huff, Carrie Couch, Mary Johnson, Kevin Davidson, and Karen Crutchfield's (collectively, "Defendants") Motion for Summary Judgment, Doc. [158], on the sole remaining claim in Plaintiff's Amended Complaint, Doc. [129], asserted under 42 U.S.C § 1983, and Defendants' defenses of qualified immunity, *res judicata*, and *in pari delicto*. For the reasons set forth below, the Court denies in part and grants in part Defendants' Motion.

**I.   BACKGROUND**

This case is based on Plaintiff Bryan Robison's allegations that Defendants, while working at the Department of Insurance, Financial Institutions and Professional Registration ("DIFP"), revoked Plaintiff's professional license without due process. Plaintiff was a Missouri licensed general bail bond agent who employed several bail bond agents in the State. His license was set to expire on August 8, 2016. Plaintiff sent sworn affidavits to DIFP stating he had two unsatisfied judgments against him in April, May, June, and July 2016.

In July 2016, Plaintiff submitted his application to renew his general bail bond agent

1

license, and Defendant Crutchfield, an Investigator with DIFP, was assigned to investigate Plaintiff's renewal application.  After the investigation, Defendant Crutchfield submitted a report (the "Report") on July 28, 2016, recommending refusal of renewal because Plaintiff did not meet the qualifications for surety on bail bonds since he had outstanding bond forfeiture judgments against him in Missouri.  On July 29, 2016, Defendant Huff, the Director of DIFP at that time, signed an Order Refusing to Renew General Bail Bond Agent License (the "Order").

Also, on July 29, 2016, Defendant Davidson, an Investigator with DIFP, sent twenty-three letters to Plaintiff's bond agent-employees that stated, "effective immediately," Plaintiff was no longer authorized to "conduct general bail bond business in the State of Missouri."  Believing this letter effectively revoked his license, Plaintiff stopped conducting bail bond business in Missouri on July 29, 2016—ten days before his license was set to expire.  Based on these facts, Plaintiff asserts that Defendants prematurely revoked his professional license without due process.

Plaintiff unsuccessfully challenged the nonrenewal of his license in Missouri state court, with the Supreme Court of Missouri rendering final disposition in June 2018 against him.  Plaintiff then filed a four-count action in this Court raising constitutional challenges to both the nonrenewal and the revocation of his license.  Since then, the Court has dismissed three counts and some defendants.  The remaining Defendants now move for summary judgment on Plaintiff's sole remaining claim and on their own defenses.

## II.   LEGAL STANDARD

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007).

In this case, one procedural note on summary judgment is in order before the Court begins. The Local Rules of this District require each party opposing summary judgment to file a Response to Statement of Material Facts that "must set forth each relevant fact as to which the party contends a genuine issue exists." L.R. 4.01(E). And the opposing party must support the dispute "with specific citation(s) to the record." *Id.* For his responses to numerous paragraphs in Defendants' Statement of Uncontroverted Material Facts, Plaintiff did *not* indicate that he contended a genuine issue existed; nor did he cite to the record showing a contradiction. *See generally* Doc. [168]. Instead of *properly* admitting or denying Defendants' properly cited facts, Plaintiff repeatedly asserted that he "can neither admit nor deny the truth" of the statements. One of the most remarkable examples being that Plaintiff actually refused to admit (or deny) that Plaintiff had and attested to having "outstanding judgments" against him. Doc. [168] ¶¶ 48, 49, 66, 69. This refusal is especially remarkable given that Plaintiff's *own* Amended Complaint alleges that "Plaintiff sent sworn affidavits to Defendant DIFP stating that he had unsatisfied *judgments* and provided to Defendant DIFP copies of the two *judgments*." Doc. [129] ¶ 23 (emphasis added). Most remarkable, though, is that *Plaintiff's own exhibits* to his "Statement of Uncontroverted and Material Facts" show that judgments were entered on both cases. *See* Doc. 156-20 ("Judgment and Order For Forfeiture of Surety Bond" entered on March 24, 2016); Doc. 156-21 *(*"Judgment of Bond Forfeiture" entered April 1, 2016).

3

In sum, Plaintiff did not dispute most of Defendants' facts nor provide the Court any citations in the record to suggest he disputes them, and, in its review of the record, the Court has not seen any contradictory evidence on the points discussed in this Memorandum and Order. Accordingly, as the Local Rules provide, the Court deems those facts discussed herein that Plaintiff did not specifically controvert as admitted.  L.R. 4.01(E); *see also, e.g.*, *DaPron v. Spire, Inc. Ret. Plans Comm.*, 377 F. Supp. 3d 946, 950 (E.D. Mo. 2019) (finding objections plaintiff raised "that d[id] not cite to the record" were "ineffective for purposes of establishing a genuine factual dispute"), *aff'd*, 963 F.3d 836 (8th Cir. 2020); *Benford v. Schneider Nat'l Carriers, Inc.*, No. 4:19-cv-00550-MTS, 2021 WL 3033346, at *2 (E.D. Mo. July 19, 2021) (deeming "several" of opposing-party's factual submissions as uncontroverted where party "failed to respond" to the particular "factual assertions," in violation of Local Rule 4.01(E)), *aff'd*, --- F. App'x ---, No. 21-2717, 2022 WL 97108 (8th Cir. Jan. 10, 2022).

### III.  DISCUSSION

#### A.  **Qualified Immunity**

##### 1.  *License Renewal*

Although license *renewal*, as opposed to *revocation*, is no longer an issue in this case, Plaintiff's counsel nonetheless continues to argue the issue of *renewal*—an issue that has since been dismissed by the Court and similarly found without merit by the Supreme Court of Missouri and the Missouri Court of Appeals.[1]  *See Robison v. Dep't of Ins., Fin. Institutions & Pro. Registration*, 437 F. Supp. 3d 725, 734 (E.D. Mo. 2020) (dismissing Plaintiff's license renewal issue); *State ex rel. Robison v. Lindley-Myers*, 551 S.W.3d 468, 474 (Mo. banc 2018) (holding Plaintiff "has not established a clear and unequivocal right to license renewal"); *State ex rel.*

---

[1] To put this issue *again* to rest, Defendants' request summary judgment on the issue of renewal in the context of qualified immunity.

4

*Robison v. Lindley-Myers*, No. WD 80793, 2017 WL 3707114, at *6 (Mo. Ct. App. Aug. 29, 2017) (same).  Further, and most recently, the Court reminded Plaintiff's counsel of this when the Court denied Defendant's Motion to Dismiss, Doc. [155], and stated if Plaintiff improperly attempted to *again* assert liability against Defendants for failure to renew—which Plaintiff is currently doing— the claim is barred by qualified immunity.  Doc. [155] at 2–3 n.2.  Thus, the Court reiterates that summary judgment has *already* been granted on *any and all issues relating to the issue of license renewal*, which includes but is not limited to, the Report and the Order.  *See Robison*, 437 F. Supp. 3d at 732–34 ("The individual defendants are therefore protected by qualified immunity to the extent Robison claims that the manner by which they failed to renew his license denied him his right to due process.").

    2.  ***The Letter***

Despite Plaintiff's attempt to bring up old issues, the only remaining issue in this case is whether Defendant Davidson's July 29, 2016 letter (the "Letter") prematurely revoked Plaintiff's license.  In a claim brought under 42 U.S.C. § 1983, qualified immunity protects a government official from liability unless his conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Smith v. City of Minneapolis*, 754 F.3d 541, 544 (8th Cir. 2014).  As applied here, each Defendant will be entitled to qualified immunity unless that specific Defendant's conduct violated Plaintiff's right to due process via the Letter.[2]  *See Whitson v. Stone Cty. Jail*, 602 F.3d 920, 928 (8th Cir. 2010) (explaining that for § 1983 purposes an official "is only liable for his own misconduct"); *see also Pitts v. City of Cuba*, 913 F. Supp. 2d 688, 708 (E.D. Mo. 2012) (noting

---

[2] "Professional licenses are 'property' for the purposes of the Fourteenth Amendment to the United States Constitution; consequently, procedural due process is required before the government may deprive anyone of his or her professional license."  *Robison v. Dep't of Ins., Fin. Institutions & Pro. Registration*, 437 F. Supp. 3d 725, 733 (E.D. Mo. 2020) (quoting *Garozzo v. Missouri Dep't of Ins., Fin. Insts. & Prof'l Registration, Div. of Fin.*, 389 S.W.3d 660, 667 (Mo. banc 2013)).

specific facts must "show[ ] what each named defendant allegedly did, or failed to do, that allegedly violated the plaintiff's federal constitutional rights"). In other words, if a Defendant was not involved in the Letter—which allegedly violated Plaintiff's right—he or she is entitled to qualified immunity. For reasons discussed below, the Court finds that Defendants Couch, Johnson, Huff, and Crutchfield are entitled to qualified immunity.

Plaintiff provides no evidence showing Defendant Johnson or Couch were directly involved in the Letter. Rather, evidence pertaining to the conduct of Defendant Couch and Johnson related to renewal, which is not at issue in this case. Plaintiff also provides no evidence to dispute the fact that neither Defendant Crutchfield or Huff was directly[3] involved in the Letter.[4] Defendant Crutchfield stated in her affidavit, "I had nothing to do with Kevin Davidson's July 29, 2016 letter."[5] Doc. [160-20] ¶ 19. Similarly, Defendant Davidson stated in his affidavit, "Huff never directed me to write or send the [Letter]."[6] Doc. [160-10] ¶ 18.

Defendant Davidson, however, is not shielded by qualified immunity. It is undisputed that Defendant Davidson wrote the Letter. And despite his affidavit stating that he did not have the authority to revoke Plaintiff's license and that the Letter did not revoke Plaintiff's license—which the Court deems as admitted—the Court finds the issue still disputed.[7] As the Court previously explained when it denied Plaintiff's Motion for Partial Summary Judgment, Doc. [174], whether

---

[3] As to any *indirect* role, as the Court previously stated "any such evidence of indirect liability . . . will not be relevant or admissible in trial." Doc. [155] at n.5, 3-4.

[4] Also, as the Court discussed *supra*, because Plaintiff failed to properly controvert these facts, they are deemed admitted. L.R. 4.01(E).

[5] Also notably, Defendant Crutchfield's role at DIFP is to review and investigate license applications—activity that pertains solely to renewal and is *not* an issue here.

[6] In his Amended Complaint, Plaintiff alleged Defendant Huff "directed Defendant Davidson to draft and send the [Letter] to all of Plaintiff's agents." Doc. [129] ¶ 84.

[7] For similar reasons, the Court does not find Defendants' fourth argument—that no genuine issues of fact remain—warrants summary judgment.

6

the Letter did "revoke" Plaintiff's general bail bond license is disputed because the language of the Letter could lead a reasonable person to believe that Plaintiff could not conduct any business under his license as of July 29, 2016, ten days before his license was set to expire.[8]

3. ***The List***

Defendants are also entitled to summary judgment based on any allegations that Defendants prematurely revoked Plaintiff's license when his name was removed from the Qualified General Bail Bond Agents list ("the List") for several weeks in 2016. As the Court previously determined, Doc. [174], Plaintiff has not shown he has a "clearly established" constitutional or statutory right to be on the List.[9] *Pearson*, 555 U.S. at 231 (explaining qualified immunity protects a government official from liability unless his conduct violated a "clearly established" constitutional or statutory right). Thus, Defendants are entitled to qualified immunity as to *any allegations involving the List*.

B. **In Pari Delicto**

Defendants argue that Plaintiff's claims or at least any relief for monetary damages are barred by the doctrine of *in pari delicto*, as Plaintiff seeks relief for bonds that would be illegal to write. Defendants, however, have not pointed the Court to any case showing this "equitable defense" would be applicable here. *See Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 836 (8th Cir. 2005). Nonetheless, the Court finds that Defendants' general argument has merit and concludes *some* damages are precluded as a matter of law.

Here, it is undisputed that during the time in question Plaintiff had unsatisfied forfeiture

---

[8] Under Missouri law, a bail bond agent can perform other duties than surety, such as recovering a fugitive. *See* Mo. Rev. Stat. § 374.783

[9] Nor did removal from the List "impair" Plaintiff's license. *Robison v. Dep't of Ins., Fin. Institutions & Pro. Registration*, No. 4:18-cv-1527-MTS, 2022 WL 539096, at *7 (E.D. Mo. Feb. 23, 2022); Doc. [174] at 12.

judgments. Missouri law prohibits an individual from writing bonds or being a surety on one if he has any outstanding forfeitures or unsatisfied judgments. *See* Mo. Sup. Ct. r. 33.17–18. Thus, as previously determined by the Court, Doc. [174], Plaintiff was statutorily incapable of writing or authorizing bonds during the time in question because he did not meet the requirements set by Missouri law. *See id*. Thus, because Missouri law disqualified Plaintiff from acting as a surety on any bail bonds during the ten day period in question, he simply could not have made money writing or authorizing bonds as a matter of law. This forecloses *any* claim to actual damages on *this* basis. Thus, the Court grants partial summary judgment on damages: Plaintiff is barred from any actual damages relating to his inability to write or authorize bonds during the ten-day period, even if the Letter operated as a revocation of his license.

C. **_Res Judicata_**

Defendant argues that Plaintiff's claims are barred by the doctrine of *res judicata* based on prior litigation in Missouri state courts. *See Robison*, 551 S.W.3d 468; *see also Robison*, 2017 WL 3707114. The Court disagrees. *Res judicata* is grounded in equity and serves to protect parties from the expense and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Poe v. John Deere Co.*, 695 F.2d 1103, 1107–08 (8th Cir. 1982); *Roach v. Teamsters Loc. Union No. 688*, 595 F.2d 446, 449 (8th Cir. 1979) (explaining *res judicata* favors "finality of judgments and the avoidance of piecemeal litigation"). Here, at one point, *res judicata* may have prevented litigation based on the equitable principals of conserving resources of the courts and parties, but Defendants now seek to assert this defense after *four years* of litigation in federal court. Allowing Defendants to invoke this defense now—also, notably after several summary judgments and motions to dismiss have already been adjudicated—seems contrary to the doctrine as it would

8

wrongly incentivize the invoking party to assert this defense after years of expending resources and only after a party's other tactics to dismiss the case failed. Similarly, the Court does not find that ending litigation now—after four long years—would be a good use of judicial resources based on the amount of time the Court has already invested in resolving this case. Further, finishing litigation of this case *will* prevent Plaintiff from asserting any other lawsuits with respect to the end of his tenure as a Missouri bondsman, especially after the Court's decision today.[10] *Dicken v. Ashcroft*, 972 F.2d 231, 233 n.5 (8th Cir. 1992) (explaining it is "well established that summary judgment is a final judgment on the merits for purposes of *res judicata*"). Finally, finishing the litigation of this case will not result in inconsistent judgments because the Missouri state courts did not consider whether the Letter "revoked" Plaintiff's license such that Plaintiff is entitled to damages—the only remaining issue here. Rather, litigation in the Missouri courts dealt with renewal and not revocation. Therefore, the Court does not find that "equity" is served by precluding further litigation of this case.

### Conclusion

Because the Court grants partial summary judgment on the issue of qualified immunity for Defendants Couch, Johnson, Huff, and Crutchfield, only one defendant remains—Defendant Davidson. Further, the Court does not find summary judgment appropriate on the issue of whether the Letter prematurely revoked Plaintiff's license because genuine disputes of material fact remain. But, to avoid any further confusion, the Court notes that *the only issue remaining in this case* is whether Defendant Davidson's July 29, 2016 letter (the "Letter) "revoked" Plaintiff's license such that Plaintiff is entitled to damages, *other than actual damages stemming from his inability to write or authorize bonds*.

---

[10] Missouri law also recognizes that "[s]ummary judgment is *always* a judgment on the merits." *State ex rel. City of Blue Springs, Mo. v. Schieber*, 343 S.W.3d 686, 690 (Mo. Ct. App. 2011).

9

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, Doc. [158], is **DENIED in part** and **GRANTED in part**.

Dated this 1st day of March 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE